THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. ANTHONY DI GIOSIA, DEFENDANT-APPELLANT.

Argued December 5, 1949—Decided January 9, 1950.

414

Mr. *John T. Keefe* argued the cause for appellant. *Mr. Edmund A. Hayes* on the brief.

*Mr. Stephen VR. Strong,* Assistant County Prosecutor, argued the cause for the State. *Mr. Matthew F. Melko,* County Prosecutor, on the brief.

The opinion of the court was delivered by

HEHER, J. The appeal is from a judgment of the Appellate Division of the Superior Court affirming a judgment of conviction rendered against appellant April 28, 1949, in the Middlesex County Court on an indictment charging carnal abuse of a woman child 14 years of age on March 29, 1948, contrary to *R. S.* 2:163–1.

The defense of *autrefois acquit* was introduced under a plea of not guilty, following the denial of a pretrial motion to dismiss the indictment on that ground (*Rule* 2:5–2 *et seq.*); and the single point now made is that the accused was subjected to double jeopardy in contravention of Article I, paragraph 11 of the Constitution of 1947, safeguarding a person, after acquittal, against trial for the same offense. The case is here under Article VI, section V, paragraph 1 (a) of the Constitution and *Rule* 1:2–1 (a) of this court.

These are the essential facts and circumstances: The prior judgment of acquittal was entered March 4, 1949, on an indictment accusing appellant of the commission of the like offense on the same woman child on November 15, 1948. On the trial of that indictment, evidence was adduced by the State tending to prove not only the offense therein pleaded, but also the offense laid in the indictment upon which the judgment now under review was rendered; and the trial judge instructed the jury impaneled to try the issue that if they believed beyond a reasonable doubt that the accused "did commit an assault or debauchery of the female sexual organs" of the prosecutrix, they should return a verdict of guilty of carnal abuse. Then came this crucial instruction: "Much has been said in this case concerning the fixing of specific dates. The authorities of our State for the legal proposition that the State is not bound in a carnal abuse case by the date set forth in the indictment have handed down numerous decisions. In the case of *State v. Yanelti* (101 *N. J. L.* 85 (*E. & A.* 1925)), Chancellor Walker, speaking on behalf of the Court of Errors and Appeals, said: 'We hold that in an indictment for carnal abuse the averment of the time of the commission of the act is formal, and not of the essence of the offense, because it is not a legal constituent of the crime, which is a crime whenever committed; and in a prosecution for carnal abuse, proof from which it may be inferred that the offense was committed on the day named in the indictment, or on any other day without the statute of limitations, is sufficient to sustain a conviction.'"

Thus, the jury in that case were instructed, not that there was no need for strict correspondence between the *allegata* and the *probata* as to the time of the commission of the specific offense laid in the indictment, but rather that proof of the alleged separate and distinct offense of like character not charged in that indictment would call for a conviction; and it follows as a necessary consequence that the verdict of acquittal embraced both of the alleged offenses made the subject of proof.

The accused was there tried and the case submitted to the jury on the hypothesis that proof of either of the specific offenses on which evidence was taken would warrant a conviction upon that indictment; and the State will not now be heard to say that the judgment therein rendered does not constitute a bar to prosecution for the offense not specifically laid to him in the first indictment. The judge in his charge on the trial of the second indictment declared that the prosecutrix had testified "that on several occasions this man violated her;" and then he made special allusion to certain circumstances which in his view tended to corroborate the child's relation of what had occurred on March 29, 1948, and therefore to establish the accused's guilt of carnal abuse on that occasion. These were treated as separate and distinct offenses, not a single offense of uncertain date. While the jury were handed the indictment, they were not told that there could be a conviction only if there were proof beyond a reasonable doubt of the perpetration of the particular offense alleged to have occurred at the time fixed in the indictment. Quite the contrary. Proof of the commission of the offense "on any other day without the statute of limitations" would suffice. There cannot be the slighest doubt that the verdict on the earlier indictment constituted an acquittal in fact of both these alleged offenses. A distinction is to be made between the charging of one offense of uncertain date, where a variance between the *allegata* and *probata* would not be fatal, and two separate and distinct offenses. See, in this connection, *State v. Sing Lee,* 94 *N. J. L.* 266 (*E. & A.* 1920); *State v. Calabrese,* 99 *N. J. L.* 312 (*Sup. Ct.* 1924).

In the earlier case, the accused was tried, without objection, for both of the alleged offenses under an indictment charging but one; and it is not now open to the State to suggest that the accused was not then subject to trial on the one charge for want of an indictment making that specific allegation and may again be tried on that charge notwithstanding the acquittal. That course would not only contravene the spirit and indubitable reason of the cited constitutional mandate, but would run counter to elemental justice.

■■ It is an ancient principle of the common law that one may not be twice put in jeopardy for the same offense. The pleas of *autrefois acquit* and *autrefois convict* are grounded on the maxim that "a man shall * * * not be brought into danger of his life for one and the same offense more than once." *Hawkins' Pleas of the Crown, pp.* 515, 526. Blackstone stated the doctrine to be that "when a man is once fairly found not guilty upon an indictment, or other prosecution, before, any court having competent jurisdiction of the offense, he may plead such acquittal in bar of any subsequent accusation for the same crime;" it protects against a second prosecution "for the same identical act and crime." 4 *Blackstone's Comm.* 335, 336. Chitty said that both these pleas depend on the principle that "no man shall be placed in peril of legal penalties more than once upon the same accusation." 1 *Chitty Cr. L.* 452, 462. In civil cases at common law the principle is expressed by the maxim that no man shall be twice vexed for one and the same cause. In this class of cases the plea of a former judgment for the same matter, whether it be in favor of the defendant or against him, is a good bar to an action. *Ex parte Lange,* 18 *Wall.* 863, 21 *L. Ed.* 872 (1873). This is one of the limitations upon arbitrary power confirmed by the Magna Charta in 1215, in the provision (*ch.* 29) ensuring the essentials of individual right and justice and the ancient liberties of the freeman against assault except "by lawful judgment of his peers, or by the law of the land." Immunity from double jeopardy was one of the cherished basic liberties of the ancient common law comprised in this guaranty of the Great Charter. The principle was secured by the successive constitutions of New Jersey. Apropos of the constitutional recognition of the doctrine, Mr. Justice Drake in 1833 said: "Our courts of justice would have recognized it, and acted upon it, as one of the most valuable principles of the common law, without any constitutional provision. But the framers of our constitution have thought it worthy of especial notice. And all who are conversant with courts of justice, and the proceedings in them, must be satisfied that this great principle forms one of the strong bulwarks

of liberty; and that if it be prostrated, every citizen would become liable, if guilty of an offense, to the unnecessary costs and vexations of repeated prosecutions, and if innocent, not only to those, but to the danger of an erroneous conviction from repeated trials." *State v. Cooper,* 13 *N. J. L.* 361, 370 (*Sup. Ct.* 1833). See, also, *State v. De Hart,* 7 *N. J. L.* 172 (*Sup. Ct.* 1824); *State v. Hall,* 9 *N. J. L.* 256 (*Sup. Ct.* 1827); *United States v. Perez,* 9 *Wheat.* 578, 6 *L. Ed.* 165 (1824).

 To sustain the plea of *autrefois acquit,* there must be an acquittal of the offense charged in law and in fact. *Com. v. Myers,* 1 *Va. Cas.* 188; *Wortham v. Com.,* 5 *Rand.* (*Va.*) 669 (1827); *Com. v. Goddard,* 13 *Mass.* 455 (1816); *McCreary v. Com.* 29 *Pa.* 323 (1857); *People v. Helbing,* 61 *Cal.* 620 (1882); *Com. v. Roby,* 12 *Pick.* (*Mass.*) 496 (1832); *Burton v. United States,* 202 *U. S.* [344] 345, 26 *S. Ct.* 688, 50 *L. Ed.* 1057 (1905). It has been said that the true test of former jeopardy is whether the evidence necessary to support the second indictment would have been sufficient to secure a legal conviction upon the first; but this is not an absolute rule. *Com. v. Roby, supra; Wharton's Criminal Law* (*12th Ed.*), § 396. And where the accused may be convicted of a lesser offense included in the greater laid in the indictment, an acquittal or conviction of the greater offense is on grounds of former jeopardy a bar to a subsequent trial for the lesser offense. *Ibid.,* §§ 394, 396.

We have gone into the historical background of the principle to elucidate and the better to grasp its essential quality and meaning.

██ It is urged by the State that evidence of carnal abuse of the prosecutrix on March 29, 1948, was admissible on the trial of the first indictment as a prior sexual act tending to sustain the principal charge, by showing mutual intimacy and disposition corroborative of the testimony of the prosecutrix touching the specific charge of statutory rape made in the indictment. True, such evidence in the given circumstances is admissible under an exception to the general rule that evidence of the accused's guilt of other crimes is not

relevant on the inquiry as to guilt of the offense laid in the indictment. *State v. Lanto,* 99 *N. J. L.* 94 (*E. & A.* 1923); *State v. Cannon,* 72 *N. J. L.* 46 (*E. & A.* 1905). This rule has general acceptance. *Com. v. Kline,* 361 *Pa.* 434, 65 *A.* 2d 348 (1949); 44 *Am. Jur. p.* 950. And it has been held elsewhere that upon a prosecution for statutory rape, evidence of subsequent offenses of like kind between the prosecutrix and the accused may be admissible as tending to show amorous inclination and mutual disposition at the time of the offense charged, if not too remote to be of value on that inquiry, but that there should be proper instructions to the jury as to the significance of such evidence and the purpose for which it was received. *People v. Thompson,* 212 *N. Y.* 249, 106 *N. E.* 78 (1914). There is obvious danger in the reception of such evidence unless its purpose be made clear to the jury, for it has a tendency to becloud the real issue and to oblige the accused to answer charges which he is not prepared to defend. The exception made in the last cited case has reference to statutory rape involving the element of consent.

But here the evidence of the prior sexual acts was not received for the limited purpose of corroborating the testimony of the prosecutrix as to the offense specifically charged in the indictment; certainly, it was not used for that purpose alone, for the jury were instructed that the time of the commission of the offense was purely formal, and not of the essence, and if it were found that the offense was committed within the period fixed by the Statute of Limitations, it was their duty to return a verdict of guilty. This is the principle of the *Yanetti case;* and it is a corollary of the submission of the issue to the jury in accordance with that principle that the verdict of acquittal covered both of the alleged offenses as to which proofs were taken.

Where, as here, the State was allowed to prove other like offenses not barred by the Statute of Limitations, without an election of the particular offense for which conviction was sought, and the jury were instructed that there should be a conviction if the accused were found guilty of any of such offenses within the period of limitation made the subject of

proof, an acquittal constituted a bar to a second prosecution for any of such specific offenses committed within that period. This is a necessary consequence of the application of the principle of the *Yanetti case*. The doctrine is grounded in reason and logic. In such circumstances, there is former jeopardy, for the second prosecution is for an offense of which the accused had in fact been acquitted. The contrary view would impair the substance of the principle of double jeopardy. *State v. Healey*, 136 *Minn.* 264, 161 *N. W.* 590 (1917); *State v. Horton*, 132 *Conn.* 276, 43 *A.* 2d 744 (1945).

Here, the State did not elect to submit to the jury the single issue of the accused's guilt *vel non* of the specific offense laid to him in the indictment. The jury were charged that proof of the same offense on the earlier day would require a conviction; *ergo*, the verdict of not guilty constituted an acquittal of that offense in law and in fact. The accused on the first trial was in jeopardy as to both alleged offenses.

The responsibility for the acquittal is the jury's. A miscarriage of justice by a jury on the trial of an indictment is not correctible by another prosecution of the indictment or by a trial of a new indictment for the same offense. Such occasional failures of justice are outweighed by the general personal security afforded by the great principle of freedom from double jeopardy. Such misadventures are the price of individual protection against arbitrary power.

The judgment of the Appellate Division is reversed; and the cause is remanded with direction to enter a *nolle prosequi*.

*For reversal*—Chief Justice VANDERBILT. and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For affirmance*—Justice WACHENFELD—1.