35 N.J. Super. 555 (1955)
114 A.2d 573
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM HOAG, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1955.
Decided June 2, 1955.
*556 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Jacob Schneider argued the cause for appellant.
Mr. William J. Arnold argued the cause for respondent (Mr. Guy W. Calissi, Bergen County Prosecutor, Mr. William C. Brudnick, Special Assistant Prosecutor, on the brief).
*557 The opinion of the court was delivered by JAYNE, J.A.D.
The defendant has been permitted to prosecute the present appeal as an indigent person. R.R. 1:2-7; 2:2-5. By reason of that circumstance the factual structure upon which the defendant's points of appeal are to be considered is in the form of a statement of facts to which counsel for the defendant and for the State have subscribed and upon which the trial judge has endorsed his approval. R.R. 1:6-2; 2:6.
On September 20, 1950 four persons, Patsy Cascio, Louis Capezzuto, Charles Galiardo, and Elmer S. Yager were patrons in a tavern in Fairview, Bergen County, where with the display of a drawn gun the defendant and two confederates were said to have robbed them and fled. On June 26, 1951 three separate indictments were returned charging in the first count the defendant and two persons whose names were unknown with the commission of the armed robbery of Patsy Cascio (No. 17231), Louis Capezzuto (No. 17232), and Charles Galiardo (No. 17233).
It is of present significance to observe that each indictment charged the commission of the robbery upon the one victim therein designated and that there was no indictment charging the defendants with robbing Elmer S. Yager. Also of present pertinency is the circumstance that the second count of each indictment accused the defendants of the offense of carrying concealed weapons.
On May 26, 27, 1952 the defendant Hoag was tried on the three indictments above mentioned. Pursuant to the direction of the court he was acquitted of the offense of carrying concealed weapons, and the jury found him not guilty of the crime of the armed robbery of Cascio, Capezzuto and Galiardo.
On July 17, 1952 the present appellant was indicted (No. 17966) for the armed robbery on September 20, 1950 (the same occasion) of Elmer S. Yager, whom he had not been accused in the previous indictments of robbing, and again for the unlawful carrying of concealed weapons on that occasion. The trial of the defendant on this indictment on *558 October 18, 19, 1954 resulted in a verdict of guilty on both counts.
On November 5, 1954 the defendant was sentenced to imprisonment for the commission of the armed robbery of Yager alleged in the first count of the indictment and given a consecutive sentence of imprisonment on the second count which charged him with carrying a concealed weapon. On December 17, 1954, by reason of the former acquittal, the latter sentence was nullified by the court. The present appeal is therefore addressed to the propriety of the conviction of the defendant for robbing Yager.
The following paragraphs of the approved statement of facts are appropriately quoted:
"6. The indictment of July 17, 1952 involved the Armed Robbery of Elmer S. Yager which occurred on the same occasion, as set forth in the indictments of June 26, 1951 and the said Elmer S. Yager, the victim named in the new indictment, testified as to details of the holdup at the trial on May 26 and 27, 1952, when defendant was acquitted of the charges that he robbed Patsy Cascio, Louis Capezzuto and Charles Galiardo.

* * * * * * * *
8. Prior to the trial, during the trial, and at the present time the defendant has invoked the defense of former or double jeopardy on the grounds that there was but one incident and one holdup; that all of the victims were present at the same time and place, and that the testimony of all of the victims, including Elmer S. Yager, was given at the first trial, when defendant was acquitted."
The point predominantly emphasized on behalf of the defendant is that he was subjected by the indictment of July 17, 1952 and by the trial in pursuance thereof to double jeopardy.
A dissertation anent the subject of former jeopardy would constitute little more than the unnecessary inflation of this intended memorandum expressive of our conclusions.
It may, however, be serviceable to marshal the citations of the recent decisions in our jurisdiction concerning the subject: State v. DiGiosia, 3 N.J. 413 (1950); State v. Labato, 7 N.J. 137 (1951); State v. Pennsylvania Railroad Co., 9 N.J. 194 (1952); State v. Shoopman, 11 N.J. 333 *559 (1953); State v. Lefante, 12 N.J. 505 (1953); State v. Midgeley, 15 N.J. 574 (1954); State v. Locklear, 16 N.J. 232 (1954); State v. McGrath, 17 N.J. 41 (1954); State v. McBride, 15 N.J. Super. 436 (App. Div. 1951), certiorari denied 342 U.S. 894, 72 S.Ct. 204, 96 L.Ed. 670 (1951); State v. Cruz, 15 N.J. Super. 577 (Cty. Ct. 1951); State v. Coolack, 17 N.J. Super. 192 (Cty. Ct. 1951); State v. Louden, 21 N.J. Super. 497 (App. Div. 1952); State v. Tumbiolo, 28 N.J. Super. 231 (App. Div. 1953), certiorari denied 347 U.S. 948, 74 S.Ct. 647, 98 L.Ed. 1095 (1954); State v. Greely, 30 N.J. Super. 180 (Cty. Ct. 1954), affirmed 31 N.J. Super. 542 (App. Div. 1954); Sylcox v. Dearden, 30 N.J. Super. 325 (App. Div. 1954); State v. Brandon, 32 N.J. Super. 269 (Cty. Ct. 1954); State v. Oats, 32 N.J. Super. 435 (App. Div. 1954).
Simply stated, the question addressed to us is whether in the one criminal undertaking now commonly characterized as a "hold-up" a defendant who was acquitted of robbing A, B, and C can be thereafter indicted and prosecuted for robbing D.
Initially we consult the statute to ascertain the essential elements of robbery as therein expressed. We quote the pertinent portion:
"Any person who forcibly takes from the person of another, money or personal goods and chattels, of any value whatever, by violence or putting him in fear, is guilty * * *." N.J.S. 2A:141-1.
Noticeably to constitute robbery there must be the commission of a larceny from the person of another accomplished with the element of force or fear. State v. McDonald, 89 N.J.L. 421 (Sup. Ct. 1916), affirmed 91 N.J.L. 233 (E. & A. 1918).
In determining former jeopardy we are not so critically concerned with whether or not the act was an associated component of the expansive criminal project or transaction as we are with whether the act was inherently and in substance and character the identical offense for the commission of which the defendant had been previously *560 tried. The constitutional inhibition protects the person from another prosecution, after acquittal, for the same offense. Const. (1947), Art. I, par. 11. Vide, State v. Cooper, 13 N.J.L. 361 (Sup. Ct. 1833).
Not infrequently there exists an act-offense dichotomy. Then, too, there are inclusory offenses which incorporate or encompass lesser offenses. Often do we observe indictments which in separate counts partition a single criminal deed into the allegation of several segmented violations of the law, each count resting upon a legalistic variation of the same fact pattern.
The "identical act" concept is many a time illusive and fertile with intrinsic difficulties. Courts have injected into its interpretation such distinct elements as the unity of the actor's movement, or the scope of his intent, or the outcome of his deed.
Certainly to sustain the plea of autrefois acquit there must be an acquittal of the offense charged in law and in fact. State v. DiGiosia, supra. In our jurisdiction the recognized test of former jeopardy is whether the evidence necessary to sustain the second indictment would have been sufficient to secure a legal conviction on the first, unless there has been a prior acquittal or conviction of a greater offense which was inclusive of the lesser offense sought to be subsequently prosecuted. State v. DiGiosia, supra; Sylcox v. Dearden, supra.
Neither the identical act nor the same evidence norms avail the defendant in the present case. Conceivably the one act of brandishing a pistol in a menacing manner might have simultaneously placed Cascio, Capezzuto, Galiardo, and Yager in a state of fear and intimidation, but to constitute robbery, the act must necessarily be complemented by the additional and successive act of taking "from the person of another, money or personal goods and chattels, * * *."
At his former trial the defendant was not charged with placing Yager in fear and taking any money or personal property from him. Surely evidence that the defendant robbed Yager would not be necessary to establish his guilt *561 of robbing Cascio, Capezzuto, and Galiardo. The robbing of Yager was not an essential ingredient or legally integral part of the alleged offenses of robbing the other three.
It should be recalled that in State v. Pennsylvania Railroad Co., supra, it was stipulated that "the same facts would be put in evidence to prove each offense." The statement of facts submitted in the present appeal does not contain an acknowledgment of an analogous import, and we cannot perceive how it could properly do so.
In the recent decision in People v. Lagomarsino, 97 Cal. App.2d 92, 217 P.2d 124, at page 129 (D. Ct. App., Cal. 1950), it was stated:
"Whatever conflict may exist in the cases involving offenses against property, when we come to offenses against persons, there is more unanimity. Particularly is this true of robbery cases, the offenses here involved. The majority, and certainly the better rule, is that there is a separate offense committed against each person robbed. Obviously, a robbery of several persons, where property is removed from each person, involves a separate act and a separate intent toward each victim."
This appears to be the rationalism in our jurisdiction. Vide, State v. McBride, supra; State v. Coolack, supra. We shall not undertake to laden this memorandum with the citations of the many pertinent decisions of the courts of other states which we have examined.
We conclude that the defendant was not subjected to double jeopardy. We may add that we do not discover in the condensed record before us any occasion for the application of the principles of res judicata or collateral estoppel which are sometimes modernly invoked in the circumstances of a subsequent prosecution of a previously determined issue in a criminal case. For example, where the presence or the identity of the defendant is disclosed to have been the cardinal issue which was manifestly resolved by the jury in the previous trial in favor of the defendant.
Assuredly our prosecutors are aware that the concept of double jeopardy is designed to prevent the government *562 from unduly harassing an accused, and we are confident that they will not resort unfairly to multiple indictments and successive trials in order to accomplish indirectly that which the constitutional interdiction precludes.
The remaining points incidentally advocated on behalf of the defendant are not impressive.
The judgment of conviction is affirmed.